IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-690

DAVID TRUJILLO, an individual

    Plaintiff(s),

v.

AURORA PUBLIC SCHOOLS;
APS BOARD OF EDUCATION;

    Defendant(s).

## COMPLAINT WITH JURY DEMAND

Plaintiff, David Trujillo, who appears individually, hereby respectfully files this action against Defendants Aurora Public Schools ("APS") and the APS Board of Education ("Board") (collectively, "Defendants") through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows.  This action seeks appropriate damages and costs.

### I.   JURISDICTION AND VENUE

1. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Federal question jurisdiction arises under the Age Discrimination in Employment Act of 1967 (29 U.S.C.S § 621 *et seq*.).

2. Plaintiff David Trujillo ("Plaintiff") is a resident of Arapahoe County, Colorado.

3. Defendants are located in Arapahoe County, Colorado.

4. All Defendants are Colorado residents.

5. The wrongful acts alleged by Plaintiff occurred in whole or in part in Arapahoe County, Colorado.

6. Venue is proper in this court under 28 U.S.C. § 1391(b)(2).

## II.   BACKGROUND FACTS

8. Mr. Trujillo was born on June 27, 1973 and is 47 years old.

9. Mr. Trujillo has been an educator since 1999.

10. Mr. Trujillo received a Bachelor's of Arts from Metropolitan State University, received a Master's degree in Curriculum and Instruction from Colorado Christian University, and a Master's degree in Educational Leadership from Denver University.

11. Mr. Trujillo began working for Aurora Public Schools (APS) in 2011.

12. Mr. Trujillo was employed as a middle school teacher at North Middle School beginning in the fall of 2016.

13. North Middle School receives federal funding.

14. In January of 2019, Mr. Trujillo was informed that North Middle School was dropping their social studies department to create a hybrid department that also focused on literacy.

15. Mr. Trujillo was told that he would need to be endorsed in Social Studies and English Language Arts to be qualified to continue teaching at North Middle School.

16. Mr. Trujillo is endorsed to teach Social Studies.

17. Mr. Trujillo has all the required credits to be endorsed in English Language Arts and just needed to pass the Praxis #5038 examination with a score of 167 or higher to be endorsed in English Language Arts.

18. Mr. Trujillo indicated to APS officials that he was ready, willing, and able to take the Praxis exam, and he had indicated the same to them in the past if it was necessary to retain his employment with APS.

19. APS indicated that Mr. Trujillo would not be retained at North Middle School, regardless of whether or not he passed the Praxis #5038 exam.

20. At the end of the 2018-2019 school year, APS told Mr. Trujillo he would no longer be working at North Middle School.

21. The reason he was given for his move out of North Middle School was that he was not certified in English Language Arts – even though he was told he would not be retained even with the proper endorsement.

22. This justification by APS was pretextual.

23. Mr. Trujillo was transferred to from North Middle School to Aurora Hills Middle School in the fall of 2019.

24. Aurora Hills Middle School receives federal funding.

25. Upon information and belief, in November of 2019, Mr. Trujillo discovered that the person who replaced him at North Middle School was not endorsed in Social Studies and English Language Arts, but was only endorsed in Social Studies according to online records.  Mr. Trujillo's replacement was not more qualified than he was.

26. His replacement was also much younger than Mr. Trujillo.

27. Upon information and belief, Mr. Trujillo's replacement at North Middle School was hired on a significantly lower salary than the salary Mr. Trujillo was receiving at North Middle School.

28. When Mr. Trujillo was transferred to Aurora Hills Middle school, he was told it was a "mutual" transfer.

29. In fact, during his meeting regarding the job placement, Principal Garcia and Assistant Principal Buch used the phrase "interview" to describe the meeting.

30. Mutual transfers must be interviewed by the incoming school while non-mutual transfers do not, according to APS policies.

31. Mr. Trujillo discovered in an email from Katrina Smith ("Ms. Smith"), the Human Resources Director at Aurora Public Schools, that the transfer was, in fact, a "non-mutual" transfer.

32. Ms. Smith specifically contradicted Principal Garcia and Vice Principal Buch in stating that, "Yesterday's meeting was not an interview."

33. In APS, while he was working at North Middle School, Mr. Trujillo was a non-probationary teacher, which entitled him to special protections, such as assurance of employment with APS.

34. However, after a non-mutual transfer, he was automatically demoted to being a probationary teacher, making him much easier to fire and also not assuring him continued employment with APS beyond August 31, 2020.

35. On March 9, 2020, Mr. Trujillo learned that he would finish the 2019-20 school year at Aurora Hills Middle School, but he would not have a job at that school or any school in APS after August 31, 2020.

36. Two younger females were hired at Aurora Hills Middle School after Mr. Trujillo was informed he would no longer have a position at the school.

37. Mr. Trujillo has an exceptional record of superb performance in APS.

38. His evaluations have routinely been excellent.

39. Since 2014, all of Mr. Trujillo's evaluations found that he was effective to highly effective.

40. Mr. Trujillo was terminated from APS due to his age and due to APS's desire to hire younger and cheaper replacements.

98. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter.

99. Plaintiff has exhausted his administrative remedies.

### III. CLAIMS AND CAUSES OF ACTION

#### A. FIRST CLAIM FOR RELIEF
*(VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 – AGAINST ALL DEFENDANTS)*

92. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

93. The Age Discrimination in Employment Act of 1967 states that it "shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age; (2) to limit, segregate, or classify his employers in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his stats as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this Act." 29 U.S.C.S. § 623(a)(1-3).

94. The Age Discrimination in Employment Act states that the "prohibitions in this Act shall be limited to individuals who are least 40 year of age." 29 U.S.C.S. § 631(a).

95. The 10th Circuit has adopted the burden shifting analysis as found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in regards to determining whether an employer has violated the Age Discrimination in Employment Act. *Simmons v. Sykes Enters.*, 647 F.3d 943 (10th Cir. 2011).

96. "Under this framework, the plaintiff must initially establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*. at 947 (internal citations omitted).

97. In order to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff may do so by demonstrating the following: "(i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802.

98. The Defendants violated the Age Discrimination in Employment Act through their wrongful acts alleged herein.

99. Plaintiff has exhausted his administrative remedies as required under the Act by filing a timely charge with Equal Employment Opportunity Commission and received a right to sue letter.

100. Defendants' violations of Plaintiff's rights under the Age Discrimination Act in Employment caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities, retirement benefits, and attorney fees and costs in this action.

## IV.     DAMAGES

100. The Defendants' discriminatory conduct alleged hereinabove has caused the Plaintiff the following damages:

   a. Lost pay, future wages, reduced wages, and benefits in amounts to be established at trial;

   b. Emotional upset, stress, and anxiety in an amount to be established at trial;

   c. Out-of-pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.

## V.     REQUEST FOR RELLIEF

Plaintiff requests that the court enter judgment in her favor and against Defendants as follows:

101.     Awarding the Plaintiff's special damages for front lost wages, benefits, and out-of-pocket expenses in amounts to be established at trial;

102.     Awarding the Plaintiff general damages for emotional distress in an amount to be established at trial;

103. Punitive damages, pursuant to 42 U.S.C. 1981, 2000(e), in the maximum amount permitted by law;

104. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

105. Awarding Plaintiff pre-judgment interest; and

106. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

*s/ Igor Raykin*
Igor Raykin, Esq. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

*s/ Alan Davis*
Alan Davis, Esq. #49870
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 523-8106
E-mail: alan@coloradolawteam.com
Attorney for Plaintiff